ARTHUR I. NEWHALL *vs.* ENTERPRISE MINING COMPANY.

Suffolk.     March 3, 1910. — May 18, 1910.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Res Judicata. Contract*, Rescission. *Fraud.*

The question, whether the cause of action in an action at law is essentially the same as that in a suit in equity, previously brought, which after a hearing upon the merits was dismissed, so that the final decree in the suit in equity is a bar to the later action at law as to every issue in the earlier suit that in fact was or in law might have been litigated, is not determined solely by the fact that both the suit in equity and the action at law originated in the same series of transactions and in conversations and communications which took place between the parties concerning them.

The plaintiff in a bill in equity against a mining corporation alleged that one W., who was the promoter, treasurer and a director of the defendant, by false and fraudulent representations of fact induced the plaintiff to purchase certain of the capital stock of the defendant which it owned, and sought a rescission of the purchase and a return of what he paid therefor. At the hearing of the suit upon its merits the plaintiff for the first time discovered from admissions of officers of the defendant that only about one third of the stock which had been sold to him was stock which the defendant had owned and the proceeds of the sale of which had gone into its treasury. The judge who heard the suit found that the plaintiff had not established his allegations of fraud, and that at any rate his suit was brought too long after the sale, and dismissed the bill. Thereafter the plaintiff elected to rescind the sale and brought an action at law to recover back what he had paid for the stock to the defendant's agent because, while he had agreed to purchase stock owned by the defendant, the proceeds of the sale of which would have gone into the corporation's treasury, only one third of the stock which the defendant's agent had sold to him was what he had agreed to purchase, the remaining being stock of the agent himself, the proceeds of the sale of which did not go to the corporation. The defendant set up as a defense the final decree in the suit in equity, and the judge, who heard the case without a jury, ruled that the defense was adequate and found for the defendant. Upon exceptions by the plaintiff, it was *held*, that the decree in the suit in equity was not a bar to the action at law, since, although the different causes of action related to the same transaction, they were founded upon differ-

ent features of it which had no necessary relation to each other and were very different in their nature.

One, who through an agent of a corporation has bought shares of the capital stock of the corporation which it has in its treasury, cannot be compelled without his knowledge and against his will to receive and retain stock that belongs to the agent personally, thus leaving himself and the corporation without the benefit for corporate use of the money, which the corporation would have received from him if its agent had done his duty.

KNOWLTON, C. J.    One Woodin was the promoter, the treasurer and a director of the defendant mining corporation, whose capital stock was ten thousand shares, of a par-value of $100 each.    Of these shares ninety-three hundred and ninety-one had been issued to Woodin in payment for his interest in certain mines, nine shares had been issued to other corporators, and six hundred shares were not issued nor subscribed for.    Woodin conveyed one thousand of his shares to one Prince as a trustee for the corporation, under a stipulation, agreed to by the board of directors, that he, Woodin, should be appointed the fiscal agent for the sale of them or of any portion of them, with authority to take a commission of not more than thirty-three and one third per cent from the selling price, this selling price to be such as the board should determine, and the proceeds of the sales to be placed in the treasury of the corporation, to be expended in the discretion of the directors, with a proviso that the balance due upon the bond given for the purchase price of the mining property should be paid in accordance with its terms. Woodin, as agent for the defendant, contracted to sell to the plaintiff and the plaintiff's wife stock belonging to the company at three different times, amounting to one hundred and thirty-four shares in all, for thirty-three and one third dollars per share.    The plaintiff's wife has deceased and the plaintiff has succeeded to her rights.    The plaintiff brought a bill in equity against the defendant, alleging that these sales were made upon false representations by Woodin of matters of fact, which, if true, would have shown that the stock was very valuable, and that the purchases were made by the plaintiff and his wife in reliance upon these false and fraudulent representations.    He attempted to rescind the contracts on account of these alleged frauds, and to obtain a decree for a return of the money paid to Woodin for the defendant.    Upon a hearing in the Superior

Court this bill was dismissed on the ground that the alleged frauds were not sufficiently supported by evidence, and that, if they were, the plaintiff had delayed too long before attempting to rescind the contracts.

Subsequently the plaintiff brought this action at law on the ground that all the sales, according to their terms, were of a part of the one thousand shares of stock belonging to the defendant and held by the trustee, called in the plaintiff's declaration treasury stock, and that the plaintiff and his wife paid Woodin for this stock, and that Woodin, in executing the contract, failed to deliver the defendant's stock, except to the amount of forty-five shares, and delivered his own stock instead. For this reason, as the property was not that which the plaintiff bought, he elected to rescind the contract and reclaim the money paid to the defendant's agent, which this agent had never paid over to his principal, but had kept as his own. The defendant's answer was a general denial, and a plea of *res judicata* founded on the decree dismissing the bill in equity. At the hearing the judge * made the following finding: "In the above action, the court finds for the defendant. I find the defendant's agent did not represent that he was selling any of the original treasury stock of six hundred shares, but he agreed to sell the syndicate stock referred to in the bill in equity held in trust by James P. Prince, and that the plaintiff agreed to buy such stock; that for relief for any misrepresentations by Woodin in such sale the plaintiff could have obtained a remedy in the bill in equity referred to in the answer, and should have sought it by the proper allegations in the bill." This so called syndicate stock was the one thousand shares above referred to. The plaintiff made many requests for rulings, and the case comes before us on his exceptions to the refusal of the judge to grant them.

The finding indicates a decision by the judge that the dismissal of the bill in equity was a bar to this suit. The argument of the defendant's counsel upon the exceptions before us was upon this ground only. It therefore becomes necessary to compare the two suits and determine whether they are for the same cause of action.

---

* *Hardy,* J.

It is not contended that the principal issue presented in the present case was decided in favor of the defendant in the suit in equity. Indeed, the matter relied upon by the plaintiff as his cause of action in this case was not averred or put in issue in the former suit. The plaintiff testified, and the other evidence tends to corroborate him, that he did not know the facts upon which he now relies until he discovered them during the former trial.

The defendant relies upon the principle that, as between the same parties, a judgment on the merits in an earlier suit is a bar to a later suit for the same cause of action as to every issue that in fact was, or in law might have been, litigated. *Foye* v. *Patch*, 132 Mass. 105, 110. *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 46. It is to be noted that the proposition is limited to a suit for the same cause of action. As was said in *Norton* v. *Huxley*, 13 Gray, 285, 290, and in *Harlow* v. *Bartlett*, 170 Mass. 584, 592, it does not follow that the causes of action in two cases are the same because they " both originated in the same series of transactions, and in the conversations and communications which took place between the parties concerning them." On the other hand, it does not follow that they were not the same because there is a difference in the form of stating them, or an omission in the statement of one to include one or more of the matters that are merely incidental or in aggravation of damages. The question is whether the substantive causes of action relied on are essentially the same, not whether they grow out of transactions which occurred at the same time and had a close relation to one another.

The plaintiff's claim in his bill in equity was founded entirely on the defendant's alleged fraudulent representations made as inducements to contracts of purchase. The claim in the present case is for a failure to perform a contract according to its terms, and for a performance which was so far a departure from the contract as to justify the plaintiff in rescinding it altogether. The cause of action in the first suit, while cognizable at law was one proper for jurisdiction in equity. The right which the plaintiff seeks to enforce in this action is strictly legal, and cannot be made the subject of a suit in equity. The evidence required to support the cause of action in the present suit is very

different from that required to maintain a suit in equity. Although the different causes of action relate to the same transaction, they are founded upon different features of it, which have no necessary relation to each other and which are very different in their nature. The present suit depends entirely upon a contractual right, and the liability of the defendant rests solely upon a breach of contract. The case is like *Allen* v. *Storer,* 132 Mass. 372, in that it could not have been made the foundation of a suit in equity. It is like *Norton* v. *Huxley, Harlow* v. *Bartlett* and *Newburyport Institution for Savings* v. *Puffer, ubi supra,* in that the decision in the previous bill in equity is not a bar to the maintenance of the plaintiff's present claim. The principal ruling requested by the plaintiff on this branch of the case should have been given.

We do not deem it necessary to consider the plaintiff's requests for rulings in detail. It is plain that the plaintiff, whó bought the stock of the defendant, which it had in its treasury, could not be compelled, without his knowledge or against his will, to receive and retain stock that belonged to another party, thus leaving himself and the corporation without the benefit of the money, for corporate use, which the defendant would have received from him if its agent Woodin had done his duty.

While the evidence strongly indicates that the plaintiff is entitled to recover, we do not think the case is exactly within the plaintiff's request that a judgment be directed in his favor under the St. 1909, c. 236, § 2.

*Exceptions sustained.*

*P. H. Kelley,* for the plaintiff.
*S. H. Tyng,* for the defendant.