## EDWARD B. TOWNE *vs.* CITY OF NEWTON.

Middlesex.    November 17, 1896. — January 8, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Land Damages — Construction of Retaining Wall — Instructions.*

At the trial of a petition for an assessment of damages for the taking by a city of the petitioner's land, it appeared that the city laid out a street or boulevard one hundred and twenty feet wide through the land; that, on each side of the street, in addition to the land so taken, the city took a strip eighteen feet wide, to be used for sloping the bank for the street so far as necessary; that on the petitioner's land was a house about fifty-four feet from the outside line of the eighteen foot strip; that the land on each side of the strip was suitable for building lots, and that opposite the dwelling-house the grade of the street was about seventeen feet below the grade of the land at the house; and there was evidence tending to show that, in the use of the petitioner's land, it would be desirable to construct a retaining wall between the street and the remaining land. The judge instructed the jury that the petitioner would have no right to construct a retaining wall either on the one hundred and twenty foot strip or on any portion of the eighteen foot strip without making some arrangement with the authorities of the city. *Held,* that, in the absence of anything to show that a different kind of wall than one that would come to the surface of the ground was meant, or that such a wall could be built without interfering with some method of sloping the bank which the city might at some time adopt, the instruction was right.

PETITION for a jury to assess the damages for the taking of the petitioner's land by the respondent city for a public street. At the trial in the Superior Court, before *Dunbar*, J., the jury returned a verdict for the petitioner; and the respondent alleged exceptions, which appear in the opinion.

*W. S. Slocum*, for the respondent.

*R. M. Saltonstall,* (*J. E. Cotter* with him,) for the petitioner.

KNOWLTON, J. The respondent city laid out a street or boulevard one hundred and twenty feet wide through the petitioner's land. On each side of the street, in addition to the land taken for this use, it took a strip eighteen feet in width " to be used for sloping the bank for said street or public way so far as is necessary therefor." On the petitioner's land was a house about fifty-four feet from the outside line of the eighteen foot strip. There was evidence that the land on each side of the street was suitable for building lots. Opposite the dwelling-

house the grade of the street was about seventeen feet below the grade of the land at the house. There was evidence tending to show that in the use of the petitioner's land it would be desirable to construct a retaining wall between the street and the remaining land, and there was conflicting evidence as to the probable expense of such a wall.

The only exception relied on by the respondent is to the instruction of the presiding judge that the petitioner would have no right to construct a retaining wall either on the one hundred and twenty foot strip or on any portion of the eighteen foot strip without making some arrangement with the authorities of the city. The judge gave very full and plain instructions in regard to the rights of each of the parties to use the eighteen foot strip, to which no exceptions were taken. These were, in substance, omitting the illustrations and explanations, that the city could use it in any reasonable way for the sloping of the bank, and that the petitioner could make any use of it that would not interfere with the exercise of this right. *Commonwealth* v. *King*, 13 Met. 115, 119. *Morton* v. *Moore*, 15 Gray, 573, 576. *Clark* v. *Worcester*, 125 Mass. 226. *Allen* v. *Boston*, 159 Mass. 324. He went further, — and this is the only part of the instruction that is objected to, — and told the jury that the building of a retaining wall on the eighteen foot strip, or on the line between that and the travelled part of the street, would be an encroachment upon the city's rights that would interfere with possible methods of using the land for sloping the bank which the city might choose to adopt. It is argued that the jury should have been left to decide, as a question of fact, whether the building of such a wall would interfere with any possible use of the land that the city could lawfully make. If, considered as a practical question, there is reasonable doubt about the answer to it, it should have been left to the jury. The counsel for the respondent has not questioned the absolute right of the city to use the land for sloping the bank as it may choose, and he has not pointed out any way in which a retaining wall could be built without interfering with possible methods of sloping and finishing the bank that the city might select. Having reference to the beauty as well as the security of the bank, it might slope the land at a certain grade, and cover it

with turf.  Having finished the slope at one grade, it might desire to change it to another.  We are unable to see how the petitioner could construct a retaining wall that might not be an obstruction in the way of work which the city might wish to do.  We understand from the bill of exceptions that the retaining wall referred to in the evidence was one that would come to the surface of the ground, and, in the absence of anything to show that a different kind of wall was meant, or that such a wall could be built without interfering with some method of sloping the bank that the city might at some time adopt, we are of opinion that the instruction was right.

*Exceptions overruled.*