CHARLES P. CURTIS & others *vs.* CITY OF BOSTON & others.

Suffolk.    December 12, 1923. — January 7, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & PIERCE, JJ.

*Way*, Public: relocation.    *Eminent Domain.    Boston.*

The city council of Boston passed an order in 1922, which was approved by the mayor, appropriating $250,000 for the establishing of a building line on a certain street and providing that that sum should be raised by a bond issue which would not exceed the borrowing capacity of the city as it then existed.    The board of street commissioners gave notice of a hearing on the matter in which they referred to a plan.    The plan showed what purported to be continuous building lines causing setbacks on both sides of the street to make the street of a uniform width.    The board passed an order, which was approved by the mayor, establishing as a building line a portion only of the line shown on the plan as the new line for one side of the street, and awarded damages to owners of property whose land was cut off by such new line; the order purported to establish the remainder of the lines shown on both sides of the street for " one year from the date of this order " and awarded nominal damages only as to such portions of the lines.    If the temporary lines had been made permanent, the entire cost of the re-establishment of the lines would have been at least $1,000,000 and far in excess of the then borrowing capacity of the city, which fact was known to the street commissioners.    In a suit in equity by thirteen taxpayers of the city of Boston to have the order of the street commissioners declared void, it was agreed " that there was no bad faith on the part of the commissioners." *Held*, that

(1) It was plain that the order of the commissioners operated and was intended to operate as a taking of private property for public use under the power of eminent domain delegated by the Legislature;

(2) As private property cannot be taken by eminent domain except for a public use, no more property could be condemned than the public use required;

(3) The procedure by the board of street commissioners must rest upon statutory authority, and, except as provided by statute, they had no authority to appropriate private property for use as a highway;

(4) There is no statutory provision conferring upon the board of street commissioners authority empowering them to lay out or discontinue a public way for the period of one year, nor to impose building lines for the period of one year;

(5) The portion of the order of the street commissioners which related to the permanent line and that which related to the temporary lines were so mutually connected with and dependent upon each other that it was clear that the board intended them as a whole; and the entire layout, therefore, must fail;

(6) A decree properly was ordered enjoining the expenditure of the appropriation for any of the purposes specified in the order of the street commissioners.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on March 14, 1923, by thirteen inhabitants and taxpayers of the city of Boston to have declared null and void a certain order by the board of street commissioners as to building lines on Province Street and to enjoin the payment of $96,485 to Massachusetts General Hospital and of $74,515 to Olympia Realty Company.

A petition by Olympia Realty Company for leave to intervene was allowed.

The suit was heard by *Carroll*, J. Material features of the plan, filed in the office of the board of street commissioners ·of the city of Boston and referred to in the notice and in the order by the board of street commissioners and in the opinion, are shown in the accompanying illustration.

Other material facts are described in the opinion. The defendants asked for the following rulings:

" 1. The order of the street commissioners both as to the establishment of the permanent and temporary building lines was lawful and proper.

" 2. The order establishing the permanent building line was lawful in itself regardless of the legality or illegality of the temporary lines.

" 3. The street commissioners by their order of October 13, 1922, established several independent building lines.

" 4. The petitioners have a plain and adequate remedy at law, namely by a writ of certiorari to quash both the appropriation order of the city council of Boston and the order of the street commissioners establishing the building lines."

The single justice ruled as follows:

" The order of the street commissioners attempted to establish building lines on each side of Province Street — the line on the land of the Olympia Realty Company and the Massachusetts General Hospital being permanent, and that on the land of the remaining abutters being temporary for one · year. I find nothing in the statute authorizing the proceedings which permits the fixing of a temporary line, and no decision of any court which supports this position. The procedure is regulated by statute; and the power granted to establish an easement and to take the property of an owner by eminent domain is not to be extended by inference or implication. This statute, G. L. c. 82, § 37, provides that a building line may be established in the manner provided for laying out ways, and that the building line may be discontinued in the manner provided for the discontinuance of a highway or a town way. St. 1893, c. 462, enacted that after a building line had once been determined on, ' until another building line shall thereafter be established in the same manner,' no structure shall be erected between ' such building line and such way.' These statutes indicate the manner of discontinuing the existing line and provide the way for the establishment of a new one. In my opinion the statute did not give authority to the board of street commissioners to establish a temporary building line and in this respect its action was illegal. A building line is to be imposed on land only in the same manner as ways are laid out. I therefore rule that the part of the order of the board providing for the establishment of the temporary building line was contrary to law and void.

" It is conceded that a permanent building line could be established on the lots owned by the Massachusetts General

Hospital and the Olympia Realty Company, if proper notice were given and all the preliminary proceedings were in accordance with the statute. Assuming this to be true, but without deciding the point, the question remains, can the order of the street commissioners be divided and the legal part separated from that part which is void and contrary to law. The order of the street commissioners dealt with a single improvement; and that improvement was the fixing of building lines extending from Bromfield Street to School Street on both sides of Province Street. I rule that the order was in effect a single order dealing with one plan, and that it cannot be divided or separated into parts. The notice given before the final order was passed refers to a plan or map, on file in the office of the commissioners, which map plainly shows a building line extending the entire distance from Bromfield Street to School Street on both sides of Province Street, and with nothing to indicate that a part of the line was to be permanent and a part of it temporary. The lines referred to in the notice are these two lines as shown on the plan. The purpose of the notice was to give the public information regarding the contemplated improvement; they had the right to suppose from the notice given that the imposition of building lines ' between School and Bromfield Streets substantially as shown on a plan in the office of this board ' was to be considered, and rejected or adopted, substantially in its entirety by the board of street commissioners. In addition to this, the order for the appropriation of $250,000 was passed by the city council ' for the establishment of a building line on Province Street between School Street and Bromfield Street.' That order could apply only to the expenditure involved in a legal and proper imposition of a building line extending the entire distance from Bromfield to School streets. It was a single order covering one public improvement.

" On the evidence before me I find, if material, that the street commissioners knew that the cost of making an outright taking of the real estate situate between the building lines on either side of Province Street shown on the plan referred to, or by making the building lines permanent,

would be in excess of the borrowing capacity of the city. It was agreed, however, that there was no bad faith on the part of the commissioners. There was no direct evidence before me showing what it would cost to establish a permanent building line throughout the street. I find however on all the evidence that this cost would be in excess of the borrowing capacity of the city.

" I also rule that the petitioners are entitled to the relief prayed for. . . . On October 13, 1922, there was being carried on, on the land of the Olympia Realty Company and the land of the Massachusetts General Hospital actual construction of the building. . . .

" The requests of the defendants, in so far as inconsistent with the rulings and findings made, are refused."

The single justice reported the case to the full court for determination.

*C. H. Baesler & N. Matthews*, for the plaintiffs.

*S. Silverman*, Assistant Corporation Counsel, for the defendants.

BRALEY, J.   This is a bill in equity by thirteen of the inhabitants and taxpayers of the city of Boston to enjoin payment from the treasury of the award made to abutters under an order of the street commissioners establishing building lines on Province Street, a highway within the municipality. G. L c. 40, § 53.   St. 1885, c. 178, §§ 1, 2, 3.   And the case is here on the report of a single justice whose findings of fact on unreported evidence are conclusive.   *Armstrong* v. *Orler*, 220 Mass. 112.

It appears that on July 11, 1922, the mayor transmitted a message to the city council stating that the " importance of opening the block bounded by Tremont, Washington, School and Bromfield streets, both for the purpose of providing a highway for public travel and for the development of realty located within this lot of land before prohibitive realty development has been created makes it essential that action be taken at once and I accordingly recommend the adoption of the accompanying order, providing for the establishment of a building line on Province Street, between School Street and Bromfield Street."

The city council thereupon on August 15, 1922, passed an order approved by the mayor, that "the sum of $250,000 be and the same is hereby appropriated for the establishment of a building line, on Province St., between School Street and Bromfield, and that to meet said appropriation the city treasurer be authorized to issue, from time to time, upon the request of the mayor, bonds or certificates of indebtedness of the city to said amount." It is found that on August 14, 1922, the borrowing capacity of the city was $382,050.65, and the order did not violate the prohibition of St. 1885, c. 178, §§ 1, 2, 3, limiting under certain conditions the borrowing capacity of the city.

The board of street commissioners, acting under statutory authority, issued on August 17, 1922, a notice, that the board is of opinion " that, in said city public convenience and necessity require that building lines be established on the northwesterly and southeasterly sides of Province street Boston Proper, between School and Bromfield streets, substantially as shown on a plan in the office of this board, that it intends to pass an order for making said building lines, and that it appoints 11 o'clock A.M. August 31, 1922, and the office of this board as the time and place for a public hearing in the matter." St. 1821, c. 110, §§ 5–8, 11–15. St. 1854, c. 448. St. 1870, c. 337. St. 1893, c. 462. St. 1906, c. 393, §§ 1, 2, as amended by St. 1913, c. 536, § 2, and Spec. St. 1917, c. 318. St. 1893, c. 462, accepted by the city October 28, 1893, now G. L. c. 82, § 37, with prior amendments. *Brimmer* v. *Boston*, 102 Mass. 19, 22. A copy of this plan is part of the record.

The board on October 13, 1922, passed an order, approved by the mayor, which after recitals of the giving of notice, and that a copy of the order had been published in two daily newspapers of the city, and that a public hearing in accordance with the notice had been given, reads as follows: " that building lines be, under the provisions of chapter 462 of the Acts of 1893 and the acts in amendment or addition thereto, established on Province Street, Boston Proper, between Bromfield Street and School Street, as follows:

"On the southeasterly side of said Province street, between

Province court and the southwesterly boundary line of the property of the Boston Five Cents Savings Bank, substantially parallel with and distant approximately thirty-three (33) feet from the southeasterly exterior side line of said Province street.

"For one year from the date of this order: on the southeasterly side of said Province street, between Bromfield street and Province court, substantially parallel with and distant approximately thirty-six (36) feet from the southeasterly exterior side line of said Province street.

"For one year from the date of this order: On the southeasterly side of said Province street, between the southwesterly boundary line of the property of the Boston Five Cents Savings Bank and School street, substantially parallel with and distant approximately thirty-four (34) feet from the southeasterly exterior side line of said Province street.

"For one year from the date of this order: on the northwesterly side of said Province street, between Bromfield and School streets, substantially parallel with and distant approximately fifty (50) feet from the building lines hereinbefore established on the southeasterly side of said street.

"Said building lines are shown on a plan marked 'City of Boston Province St. Boston Proper August 7, 1922 . . .' and on file in the office of the Street Laying-Out Department.

"And this Board further orders that existing buildings, steps, windows, porticos and other usual projections appurtenant thereto, as far as they lie between the building lines herein established and the present exterior side lines of said Province street, may remain as they are at the date of this order, intending hereby to sanction all existing projections over said building lines until the said projections shall have been removed therefrom or until said Province street is ordered relocated or widened by the City of Boston by and through its duly authorized officials under authority of the statutes in such cases made and provided."

On its face this order designated a continuous building line on each side of Province Street. The line on the southeasterly side crossed the land of the Olympia Theatre Company and of the Massachusetts General Hospital, who were

awarded damages aggregating $175,000 on the basis of a permanent line, while the remaining abutters on that side, and on the northwesterly side, were awarded only nominal damages, because the line as to their lands was to be established only for one year from the date of the order. It is found that, if the temporary lines had been permanent, the entire cost of the " development " would have been at least " $1,000,000." But it is unnecessary for our decision to determine whether the underlying purpose of the commissioners, as the plaintiffs contend, was to evade the provisions of St. 1885, c. 178, § § 1, 2, 3. The parties agreed before the single justice, " that there was no bad faith on the part of the commissioners." See *Browne* v. *Boston*, 179 Mass. 321, 322.

The locating or establishment of building lines as prescribed by the order, delimited the estates of the abutters so that they should conform to the street lines shown by the plan, even if under G. L. c. 82, § 37, " existing buildings, steps, windows, porticos and other usual projections appurtenant thereto, as far as they lie between the building lines herein established and the present existing side lines of said Province street, may remain as they are at the date of this order, intending hereby to sanction all existing projections over said building lines until the said projections shall have been removed therefrom or until Province street is ordered relocated or widened by the " city under the authority conferred by statute to relocate or widen highways. See *Tyler* v. *Hudson*, 147 Mass. 609. The terms of the order are explicit. It contained the adjudication of the commissioners, that public convenience and necessity required the establishment of the lines. It stated the intention of the board to establish them, and directed notice to the abutters of the time and place where the board would proceed to lay out the lines, and hear parties who were entitled to be heard in the matter of damages, and betterment assessments. The board however determined that " There are no betterments; damages are as follows," and the names and amounts awarded to the abutters are annexed.

It is plain, that the order operated, and was intended to

operate, as a taking of private property for public use under
the power of eminent domain delegated by the Legislature.
*Dwight* v. *Springfield*, 6 Gray, 442, 443. *Fuller* v. *Mayor
& Aldermen of Springfield*, 123 Mass. 289, 290, 291. *Murray* v. *Norfolk*, 149 Mass. 328. *Morse* v. *Stocker*, 1 Allen,
150, 157. *Dorgan* v. *Boston*, 12 Allen, 223. *Durgin* v.
*Minot*, 203 Mass. 26, 28. *Comiskey* v. *Lynn*, 226 Mass. 210,
212. *Zeo* v. *City Council of Springfield*, 241 Mass. 340.
*Eubank* v. *Richmond*, 226 U. S. 137, 144, 145. G. L. c. 79,
§ 1. G. L. c. 82, § 37. St. 1893, c. 462. And as private
property cannot be taken except for a public use, no more
property is to be condemned, than the public use requires.
*Simonds* v. *Walker*, 100 Mass. 112, 113. *Lowell* v. *Boston*,
111 Mass. 454, 463. *Doon* v. *Natick*, 171 Mass. 228, 230.
The procedure of the commissioners accordingly must rest
on the statute, and they had no authority to appropriate
private property for use as a highway except as therein pro-
vided. *Hellen* v. *Medford*, 188 Mass. 42. See *Weeks* v.
*Grace*, 194 Mass. 296, 298.

By G. L. c. 82, § 37, a building line can be established and
discontinued in the manner prescribed for the laying out
and discontinuance of highways and town ways. The
Legislature has enacted special statutes providing for the
taking of existing easements, as well as taking in fee of land,
of which St. 1913, c. 700, an act to provide an additional
water supply for the cities of Salem and Beverly, and the
metropolitan water act, St. 1895, c. 489, are sufficient ex-
amples. And by Spec. St. 1919, c. 115, the cities of Lynn,
Peabody, Salem and Beverly and the town of Danvers, which
by St. 1901, c. 508, and St. 1913, cc. 698, 699, and 700, had
been authorized to take water from the Ipswich River, were
" further authorized, in case of emergency, to take water
from said river or its tributaries during the months from
June to November, inclusive, in the years nineteen hundred
and nineteen, nineteen hundred and twenty and nineteen
hundred and twenty-one, or any of said years, in quantities
not exceeding those which may be taken from December to
May, inclusive . . . whenever, in the opinion of the State
department of health, the taking of water during the months

aforesaid in the years mentioned, . . . is necessary to provide an adequate water supply for the cities and town herein mentioned . . . ." See also St. 1902, c. 351. But our attention has not been called to any general statute or law for the laying out, or discontinuance of highways, which empowered the commissioners to lay out, or discontinue a public way for the period of one year. If they could not lay out, and take land for a highway which was to exist for one year only, they could not impose building lines for one year. The taking does not purport to be in fee, and the abutters were entitled to compensation for all damages suffered by a perpetual easement imposed for the public use. *Dingley* v. *Boston,* 100 Mass. 544, 560. The statute contemplates that the taking of the same land for a highway shall not be at recurrent intervals until the way has been legally discontinued, and that damages for each taking shall be measured by the duration of each successive condemnation. *Boston* v. *Richardson,* 13 Allen, 146, 160. *Dingley* v. *Boston,* 100 Mass. 544, 560. *Pierce* v. *Drew,* 136 Mass. 75. *Page* v. *O'Toole,* 144 Mass. 303. *Titus* v. *Boston,* 161 Mass. 209. *Doon* v. *Natick,* 171 Mass. 228, 230. *Winnisimmet Co.* v. *Grueby,* 209 Mass. 1. G. L. c. 79, § 1.

It is contended by the defendants, that, even if the temporary lines were unauthorized, the commissioners established several building lines, and the permanent line was within the statute. The notice of the commissioners was for a hearing on the establishment of building lines " shown on a plan in the office of this board." The message of the mayor referred to, and the appropriation of the city council provided, " for the establishment of a building line on Province Street, between School Street and Bromfield Street." The order of the board however divides the southeasterly line into two distinct portions, so that in the taking one part covers the estates of the realty company and the hospital, while the other part covered the estates of the remaining abutters on that side. The appropriation manifestly does not provide for two lines on the southeasterly side of Province Street. The order of the commissioners cannot be divided. It is not capable of a double construction which

sustains the permanent taking, and disregards the taking for one year. *Preston* v. *Newton*, 213 Mass. 483, 485, 486. The valid and invalid parts moreover are so mutually connected with, and dependent upon each other, as to warrant the conclusion in substance of the single justice, that the board intended them as a whole, and he rightly ruled that if all could not be given effect, the entire layout must fail. *Warren* v. *Mayor and Aldermen of Charlestown*, 2 Gray, 84, 98, 99.

It follows, that a decree for the plaintiffs is to be entered with costs, enjoining the expenditure of the appropriation for any of the purposes specified in the order of the street commissioners, the details of which are to be settled in the county court. *Welch* v. *Emerson*, 206 Mass. 129.

*Ordered accordingly.*